HELEN F. VILLANI, Administratrix of the Estate of Marianne Villani, Deceased, plaintiff, v. THE WILMINGTON HOUSING AUTHORITY, a corporate body organized and existing pursuant to Chapter 160 of the *Revised Code of Delaware* 1935; THE BALTIMORE AND OHIO RAILROAD COMPANY, a corporation of the State of Maryland; PHILADELPHIA AND READING RAILWAY COMPANY, a corporation of the Commonwealth of Pennsylvania; and DIAMOND ICE AND COAL COMPANY, a corporation of the State of Delaware, defendants.

(*June* 30, 1954.)

RICHARDS, P. J., sitting.

*John M. Bader* for the plaintiff.

*William H. Bennethum* (of Morford, Bennethum and Marvel) for The Wilmington Housing Authority.

*William Prickett* for the Baltimore and Ohio Railroad Company.

*John W. Huxley, Jr.,* and *Thomas H. Wingate* for Philadelphia and Reading Railway Company.

*Henry M. Canby* and *William A. Worth, Jr.,* (of Richards, Layton and Finger) for Diamond Ice and Coal Company.

Superior Court for New Castle County, No. 196, Civil Action, 1953.

RICHARDS, P. J.:

It is alleged in the complaint that on February 23, 1952, Marianne Villani, a child aged two years and eight months re-

sided with her parents, Victor E. Villani and the plaintiff, Helen F. Villani, at 676 Shipside, a housing project in Christiana Hundred, New Castle County, Delaware, under the jurisdiction and control of the defendant, The Wilmington Housing Authority; that shortly before nine o'clock on the morning of said date, the said Marianne Villani wandered away from the home of her parents at said housing project, crossed the railroad right-of-way maintained by defendant, The Baltimore and Ohio Railroad Company, crossed the railroad right-of-way maintained by defendant, Philadelphia and Reading Railway Company, and after proceeding about a quarter of a mile fell into a tributary of the Christiana River, located on the lands of Diamond Ice and Coal Company and was drowned.

It is contended that the defendant, The Wilmington Housing Authority, knowing or being upon reasonable notice of the proximity of said railroad tracks and the tributary of the Christiana River, both of which constituted a reasonably foreseeable attraction to small children, was negligent in that it knowingly allowed a certain fence previously erected by it along the South-westerly boundary of Shipside, the housing project controlled by it, to fall into and remain in such a state of disrepair that it presented no obstacle to the passage to children of the age of the deceased.

It is further contended that the defendant, Diamond Ice and Coal Company, being the owner in fee simple of the lands and premises abutting said tributary of the Christiana River, and knowing of the proximity of said tributary of the Christiana River to Shipside, the housing project, and the number of small children residing there, was negligent in that it failed to take reasonable and proper steps to prevent the access of small children to said water course.

The defendant, The Wilmington Housing Authority, contends that it owed plaintiff's decedent no duty to maintain boundary fences in repair; and further contends that having jurisdiction over the housing project known as Shipside, did not im-

pose upon it the duty of protecting minor children who lived there from something which might be found to be an attractive nuisance on the property of someone else.

There is no common law duty requiring a landowner to enclose his land with fences. In many grazing states the duty is regulated by statute. 22 *Amer. Jur.* 513, Sec. 3; *Carey v. Schweitzer,* 3 *W. W. Harr.* 211, 134 *A.* 52.

The only fence law in force in this state applies solely to partition fences, defining what constitutes a lawful fence, and imposes no duty of the landowner to a tenant. 25 *Del. C.* § 1301. *Carey v. Schweitzer, supra.* Of course a landowner may enter into contractual relations with his tenant with respect to fencing. To hold that a landowner was negligent by failing to keep a fence on property occupied by his tenant in such a state of repair as would prevent the children of his tenant from leaving the premises, brings up the question of the kind of a fence he would be required to build, the manner of construction and the height. The additional fact of the proximity of the railroad track of The Baltimore and Ohio Railroad Company, the railroad tracks of Reading Railway Company and the stream of water on the land of Diamond Ice and Coal Company, located on lands owned by others and not under the control of the defendant, The Wilmington Housing Authority, does not alter the situation.

The Wilmington Housing Authority was not required to keep the fence around its housing project known as Shipside, in repair, and could not be expected to know what reasonably constituted a foreseeable attraction to small children who wandered away from said housing project. It would be asking too much of the owners of property, to require them to foresee everything in the community in which their property was located, which might prove to be attractive to the children of their tenants.

The defendant, Diamond Ice and Coal Company, contends there is no legal liability on a landowner for the death of an

infant trespasser in a natural stream flowing through the owner's land. It was not denied that the stream of water in which the plaintiff's intestate was drowned, known as Little Mills Creek, a tributary of the Christiana River, is a natural water course.

The law is well settled that an owner or person in charge of property has no duty to a trespasser, except to refrain from injuring him intentionally, wilfully, or wantonly. This rule of non-liability for injuries to trespassers, applies with equal force to infant trespassers, except under circumstances where liability may be found to exist under the attractive nuisance doctrine. 65 *C. J. S.*, Negligence, §§ 24-28, page 437.

The attractive nuisance doctrine imposes liability upon the owner or person in charge of property, for injuries to children of tender years, technically trespassers, resulting from the failure of such owner or person in charge, to exercise proper care to protect children from instrumentalities or conditions which he should realize by the exercise of ordinary care and judgment, would naturally attract them to places of danger.

It originated in England in the case of *Lynch v. Nurdin*, 1 *Q. B.* 30, 41 *E. C. L.* 422, 113 *Reprint* 1041. In that case the defendant left a horse and cart standing on the street unattended for about half an hour and plaintiff, a child seven years of age, was injured while playing on the cart. The Court found that the plaintiff was negligent, but also held that he used as great a degree of care as he could be expected to possess and could not be blamed for yielding to the temptation placed before him by the defendant.

The doctrine was recognized by the Supreme Court of the United States in the case of *Sioux City & P. R. Co. v. Stout*, 17 *Wall.* 657, 21 *L. Ed.* 745. There a child was injured while playing on the defendant's turntable, after which it was referred to as the doctrine of the railroad turntable cases.

The courts throughout this country are divided with respect to the application of the doctrine. Some have rejected it on the

ground that it is founded on sympathy, impairs property rights, and imposes a higher duty on the community for the protection of children than is imposed on their parents; others refuse to recognize a distinction between attractive nuisance cases and other negligence cases, but hold that the owner or person in charge of property, is required to use diligence when an attraction is place where children are known to habitually play. *Slattery v. Drake*, 130 *Or.* 693, 281 *P.* 846; *Heitman v. Lake City*, 225 *Minn.* 117, 30 *N. W.* 2d 18.

In many cases it has been left to the jury to determine whether the defendant should have reasonably foreseen whether the person injured would have been attracted by the thing or condition which caused the injury in the particular case. *Lynch v. Nurdin, supra; Sioux City & P. R. Co. v. Stout, supra.*

In *Kotowski v. Taylor*, 1 *W. W. Harr.* 430, 114 *A.* 861, it was held that a tenant living with his family within view of a sand pit on the same premises, could not recover for the loss of the service of his child, six and a half years old, who was killed by the cave-in of the banks of the sand pit; being guilty of contributory negligence and the doctrine of attractive nuisance having no application. In *Weinberg v. Hartman*, 6 *Terry* 9, 65 *A.* 2d 805, plaintiff went to defendant's mill to transact business accompanied by his daughter who was four and a half years old; the mill contained much moving machinery including a corn crusher located under a trap-door in the floor of the room where they saw the defendant; the corn crusher was in operation at the time, the trap-door being open with no guard rail around it and defendant gave no warning of the danger. While plaintiff was talking with defendant the child fell into the corn crusher and was severely injured. The Court held that the child was not a trespasser but an invitee. She was not lured upon the premises by the attraction of something the dangerous nature of which she could not be expected to anticipate because of her immaturity. In all probability she did not know of the existence of the crusher when she entered the building. The demurrer to the declaration was sustained on the ground that it failed to

state a good cause of action under the attractive nuisance doctrine. In *Cann v. Mann Const. Co.*, 8 *Terry* 504, 93 *A.* 2d 741, 742, an administrator brought suit for the wrongful death of a boy seven years of age. Count 1 of the complaint alleged that the defendant was constructing apartment houses on a tract of land near a residential area; that the houses were partly completed and rough flooring in place; that children of the neighborhood were in the habit of playing in and about the buildings and were encouraged to do so by the construction work; that the deceased child, while playing in one of the houses, fell through an unprotected opening in the rough flooring and was drowned in the water in the basement. In reply to defendant's motion to dismiss the count on the ground that it did not state the negligence of the defendant with sufficient particularity, plaintiff contended that the allegations of negligence were sufficient under the attractive nuisance doctrine. In granting the motion to dismiss the count the Court said: "There are two sets of circumstances which are essential to a particularized statement of negligence under the attractive nuisance doctrine. The first is that the defendant knew or should have known that the structure or instrumentality was alluring to children and endangered them. The second is that, with such knowledge and in some specified way, the defendant failed to exercise reasonable care to protect from injury the child who yielded to the attraction".

In all three of these cases this court refused to apply the doctrine.

■ Bodies of water, especially natural water courses such as the stream in this case is recognized to be, are not subject to the attractive nuisance doctrine, in the absence of some unusual condition or artificial feature other than the mere presence of the water. This rule has been applied also to artificial bodies of water and there are many cases holding that the doctrine is not applicable to the various kinds of bodies of water which exist today.

*Irwin Savings & Trust Co. v. Pennsylvania R. Co.*, 349 *Pa.* 278, 37 *A.* 2d 432; *McCall v. McCallie*, 48 *Ga. App.* 99, 171 *S. E.*

843; *Bicandi v. Boise Payette Lumber Co.*, 55 *Idaho* 543, 44 *P. 2d* 1103; *Kink v. Simons Brick Co.*, 52 *Cal. App.* 2d 586, 126 *P. 2d* 627; *Harriman v. Incorporated Town of Afton*, 225 *Iowa* 659, 281 *N. W.* 183; *Gorman v. City of Rosedale*, 118 *Kan.* 20, 234 *P.* 53; *Anderson v. Reith-Riley Const. Co.*, 112 *Ind. App.* 170, 44 *N. E.* 2d 184.

██ In the case before me the child wandered a quarter of a mile from the house of his parents before he reached Little Mill Creek, the stream on the land of the defendant Diamond Ice and Coal Company, in which he was drowned. The defendant had not placed or erected anything on or near the stream which would attract children to it, but had left it in its natural condition. The only course it could take to prevent an occurence like the one which happened, in the future, would be to erect barriers on its property along the stream or place guards there. This would impose too great a burden upon the owners of property. A rule of this character would tend to shift the responsibility for the care of children from their parents to strangers. *Bicandi v. Boise Payette Lumber Co., supra.*

That our new rules have done away with the common law technicalities of pleading, and a more liberal construction is recognized, must be admitted. Rule 8(a), *Del. C. Ann.*, provides that a complaint shall contain a short and plain statement of the claim showing that the pleader is entitled to relief.

After a careful consideration of the complaint filed in this case, I am convinced that the statement of claim fails to show the plaintiff is entitled to relief from the defendants.

The complaint is dismissed as to all of the defendants.