James E. CAINE, Administrator of the Estate of Robert Caine, Deceased, Plaintiff below, Appellant,

v.

NEW CASTLE COUNTY, George & Lynch, Inc., James L. Taylor, t/a Security Fence Co., and MCA Engineering Corporation, Defendants below, Appellees.

Supreme Court of Delaware.

Submitted Sept. 14, 1977.

Decided Oct. 7, 1977.

On Motion for Reargument Submitted Oct. 12, 1977.

Decided Oct. 28, 1977.

E. Leigh Hunt, of Abramo, Hunt & Abramo, Wilmington, for plaintiff-appellant.

Roger Sanders, of Prickett, Ward, Burt & Sanders, Wilmington, for New Castle County.

Richard W. Pell, of Tybout & Redfearn, Wilmington, for George & Lynch, Inc.

Charles K. Keil, of Bayard, Brill & Handelman, Wilmington, for James L. Taylor, t/a Security Fence Co.

Vincent A. Theisen and Michael J. Goodrick, of Theisen, Lank & Mulford, Wilmington, for MCA Engineering Corp.

Before DUFFY, Justice, MARVEL, Chancellor, and BROWN, Vice Chancellor.

DUFFY, Justice:

This is an appeal in a wrongful death and survival action against New Castle County (County), George & Lynch, Inc., James L. Taylor, Trading as Security Fence Co. (Taylor), Donald R. Knox, Inc. (Knox),[1] and MCA Engineering Corporation (MCA) for having negligently caused the death of an eleven-year-old boy. Relying largely upon a finding that the premises on which dece-

---

1. Plaintiff does not appeal from the dismissal as to Knox which was the landscape architect of the project discussed hereinafter.

dent was killed were not open to public use and that he was a trespasser, the Superior Court held that the action against defendants was barred by the provisions of the Delaware Premises Guest Statute, 25 *Del.C.* § 1501,[2] and *The Restatement of Torts* § 339 (2d ed.).[3] Summary judgment was granted accordingly.

## I

Robert Caine was fatally injured on December 18, 1973, allegedly as the result of colliding with a metal post near the base of a hill on which he was sledding. The hill was located in the Delcastle Recreation Area (Area) owned by the County and was artificially created as part of a project, still under construction at the time of the accident, to convert the Area into a parkland with athletic facilities.[4] The metal post was anchored in concrete, extended approximately six feet above ground, and was one of many such posts erected as part of a chain link fence not yet completed.

The parties are in disagreement as to whether there are material issues of fact in dispute, particularly regarding MCA's responsibility, decedent's status, and whether the Area was "open" or "closed" to public use. We affirm the grant of summary judgment as to MCA and reverse as to all other defendants.

**2.** 25 *Del.C.* § 1501 provides:
"No person who enters onto the premises owned or occupied by another person, either as a guest without payment or as a trespasser, shall have a cause of action against the owner or occupier of such premises for any injuries or damages sustained by such person while on the premises unless such accident was intentional on the part of the owner or occupier or was caused by the wilful or wanton disregard of the rights of others."

**3.** *Restatement, Torts* § 339 (2d ed.) provides:
"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

## II

■ First as to MCA, we find on the record before us, and contrary to the allegations of the complaint, that its responsibility was only to inspect the general contractor's work and the materials used, and to keep records; it had neither control over the work nor responsibility for what was done or how it was done. Accordingly, since there is no dispute as to these material facts, the grant of summary judgment for MCA was proper. *Ebersole v. Lowengrub,* Del.Supr., 4 Storey 463, 180 A.2d 467, 469 (1962).

## III

■ Turning now to the critical question of decedent's status, the Superior Court determined as a matter of law that he was a trespasser and was bound by the Premises Guest Statute. The Court also measured the decedent's status against the provisions of *The Restatement of Torts* §§ 329, 330, 332 (2d ed.) before announcing its judgment for defendants.

A "trespasser" is defined by *Restatement of Torts* § 329 (2d ed.) as follows:
"A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise."

In contrast, § 330 defines "licensee" this way:

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

**4.** George & Lynch was the general contractor, Taylor was a subcontractor who erected the metal post, and MCA provided inspection and other services for the County.

"A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent."

And § 332 defines a "public invitee" as: ". . . a person who is invited to remain on land as a member of the public for a purpose for which the land is held open to the public."

Comment c of § 332 adds:

"It is immaterial that the person is one whom the possessor is not willing to receive as an invitee if the possessor's words or other conduct are understood, and would be understood by a reasonable man, as indicating the possessor's willingness."

Comment d of § 330 contains similar language.

It appears that the Superior Court accepted the County's theory of the case and adopted its reasoning, almost in *haec verba*. In so doing the Court concluded that plaintiff had failed to bring the claim within either § 330 or § 332; that is, plaintiff did not show that the County had "consent[ed]" to decedent's entry, or that the Area was "open to the public," or that decedent was "invited to enter." We disagree.

The Area in which the accident occurred was public land owned by the County and in the process of being developed for special park purposes; that is, as a softball field. But the specific land under development was part of and contiguous to a much larger tract of parkland which was, apparently not being developed (at least, not in the same way). We do not understand the County to contend that public access to the latter area was restricted or prohibited. Thus the dividing line between land (allegedly) "open" and land (allegedly) "closed" is of obvious significance; and the way in which the public was warned of any restrictions or prohibitions is of critical importance.

Reading the record in the light most favorable to plaintiff, as we must, *Schorah v. Carey,* Del.Supr., 331 A.2d 383 (1975), it appears that until after decedent's death signs were not posted clearly indicating that the construction area was "closed"; that, with the exception of one-half of a "sawhorse," barricades were not maintained at the entrance to such area from any of the highways; that there were neither warning signs nor barriers along any kind of boundary dividing the construction area allegedly closed from the contiguous park area which was admittedly open; that many children used the disputed area if it were open public park; and that the only clearly prohibited activity was the use of motorized vehicles.

The inferences most favorable to plaintiff to be drawn from these facts, 6 Moore, *Federal Practice* ¶ 56.15(8) (2d ed.), are that the disputed area was not effectively closed to public use and that decedent understood this to indicate the County's consent or willingness for him to enter as a member of the public. Given these inferences, it cannot be said on unquestioned facts that defendants are entitled to judgment as a matter of law on the theory that the decedent was a trespasser. *Restatement* § 329, supra.

We are satisfied that the record contains sufficient dispute of material facts as to all defendants except MCA, particularly regarding the Area for public use, decedent's status as a trespasser and knowledge of defendants of the use of the Area by children and the risk to them. Consequently, summary judgment on the basis of 25 *Del.C.* § 1501 and the *Restatement of Torts* § 339 (2d ed.) should not have been granted to these defendants. *Schorah v. Carey,* supra.

\* \* \* \* \* \*

The judgment is affirmed in part and reversed in part.

## ON MOTIONS FOR REARGUMENT

Defendants New Castle County, George & Lynch, Inc., and James L. Taylor have moved for reargument, contending that the summary judgment in their favor should be affirmed because there is no evidence in the record that they failed to exercise reasonable care, or that they had reason to know that decedent would not discover the dan-

ger of sledding on the slope. See *The Restatement of Torts,* §§ 341, 341A (2d ed.). They also contend that decedent was contributorily negligent as a matter of law.

■ We first note that issues of negligence are not generally susceptible of summary judgment adjudication. *Faircloth v. Rash,* Del.Supr., 317 A.2d 871 (1974); *Ebersole v. Lowengrub,* Del.Supr., supra. Rather both questions of negligence and contributory negligence are ordinarily for the finder of fact. *Wootten v. Kiger,* Del.Supr., 226 A.2d 238 (1967). Only when one conclusion can be drawn from undisputed material facts may such questions be determined as a matter of law. Cf. *Adams v. Kline,* Del. Supr., 239 A.2d 230 (1968).

■ Given the record showing as to the use of the hill, to which we have referred, the weather and the uncertainty as to visibility of the silver-gray poles against a background of white snow, we cannot say that on unquestioned facts defendants are entitled to judgment as a matter of law. In brief, whether defendants exercised reasonable care or had reason to know that decedent would not discover the dangers involved, are, on the basis of this record, jury questions.

■ In light of such record and the fact that decedent was an eleven-year-old boy, we cannot determine, as a matter of law, that he was contributorily negligent for failing to see obstacles in his path and control his movements to avoid them. Thus, the question of whether decedent was contributorily negligent is also a jury issue.

\*   \*   \*   \*   \*   \*

The motions for reargument are denied.