**Alan R. MALIN, Plaintiff Below, Appellant,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted Sept. 22, 1981.

Decided Nov. 4, 1981.

Michael Weiss (argued), of Kimmel & Spiller, P. A., Wilmington, for plaintiff-appellant.

Somers S. Price, Jr. (argued) and John E. James, of Potter Anderson & Corroon, Wilmington, for defendant-appellee.

Before McNEILLY, QUILLEN and HORSEY, JJ.

QUILLEN, Justice:

On February 8, 1977, plaintiff, Alan R. Malin, was a sanitation worker for the City of Wilmington. Plaintiff was injured when a train engine owned by defendant, Consolidated Rail Corporation (Conrail), struck the City garbage truck in which the plaintiff was riding. The truck had just disposed of its refuse at the New Castle County landfill and had departed, traveling west on Lambson's Lane, which is the only road that provides an ingress and egress to the landfill area. Lambson's Lane is a public road maintained by the State. Cutting across Lambson's Lane is the railroad track in question, which lies upon a right-of-way owned by Conrail. East of the railroad crossing, the road goes exclusively to the landfill. The collision occurred on Conrail's land. The crossing was maintained by Conrail to a distance of two feet of the outer side of the rail on each side. There was no railroad crossing gate or other warning device which warned the traffic which traveled on Lambson's Lane about oncoming trains. The landfill was open to the public.[1]

---

1. The landfill was open from 6:00 a.m. to 6:00 p.m. Use between 6:00 a.m. and 8:00 a.m. and 4:00 p.m. and 6:00 p.m. was limited to licensed public refuse collectors.

Although the State of Delaware usually enters into written agreements with railroad companies, obtaining easements on behalf of the public where roads cross pre-existing railroad tracks, the public records show no such easement at the Lambson's Lane railroad track location. There are no signs at the railroad crossing indicating the crossing is a private one. The railroad crossing is paved and level with the road surface.

Plaintiff brought a negligence action against Conrail in the Superior Court. In an amended answer Conrail asserted an affirmative defense claiming that the Premises Guest Statute, 25 *Del.C.* § 1501, which bars recovery except for intentional conduct or a wilful or wanton disregard of the rights of others, was applicable to this case.[2]

Thereafter, Conrail, pursuant to Superior Court Civil Rule 16, filed a motion for a pretrial legal determination as to whether the Premises Guest Statute was in fact applicable. The Superior Court Judge ruled in favor of Conrail concluding that the statute was applicable since the accident occurred on Conrail's property. The plaintiff has taken an interlocutory appeal to this Court.

The Superior Court, noting that the railroad had tacitly given the public permission to use the crossing for access to the public landfill, held Mr. Malin was a "guest without payment". The Court relied on the fact "that the phrase 'guest without payment' included 'all licensees.'" See *Acton v. Wilmington and Northern Railroad Company*, Del.Supr., 407 A.2d 204, 206 (1979).

The Superior Court Judge took some pain to express dissatisfaction with his result:

It appears to me that the premises Guest Statute was intended generally to protect the owners or occupiers of private property against suits by trespassers or guests.

I find it very hard to believe that the statute was intended to go so far as to protect railroads against a suit brought by a person who alleges that the railroad was negligent when he was hit by a locomotive at a rail crossing when the crossing was on a road which had been used by the public for many years and the crossing was the only legal access to a publicly maintained landfill. However, the wording of the statute is such as to give the Court no choice in this case.

By footnote, the Court added that the instant case was "clearly distinguishable" from *Caine v. New Castle County*, Del. Supr., 379 A.2d 1112 (1977), a case in which "public invitee" status was held to render the Premises Guest Statute inapplicable. See also Anno. 95 A.L.R.2d 986, *et seq.*

With regard to the similar Automobile Guest Statute, various opinions of this Court have often noted that we do not favor the judicial creation of patchwork exceptions to avoid the legislative enactment. See *Justice v. Gatchell*, Del.Supr., 325 A.2d 97, 104 (1974); *Foster v. Shropshire*, Del.Supr., 375 A.2d 458, 460 (1977); *Loper v. Street*, Del.Supr., 412 A.2d 316, 319 (1980). But it should be particularly noted here that both the *Acton* and *Caine* cases recognize a separate status for the "public invitee" under the Premises Guest Statute. The *Caine* case reversed a grant of summary judgment based on the Premises Guest Statute in a wrongful death action involving a sledding accident on a portion of a County recreation area which was under construction. The Court held there was a jury question as to whether the portion of the parkland under construction was "effectively closed to public use", thus preventing "public invitee" status. As noted above, the Superior Court below found that "the instant case was clearly distinguishable

**2.** The statute in effect at the time of the collision read as follows:

No person who enters onto the premises owned or occupied by another person, either as a guest without payment or as a trespasser, shall have a cause of action against the owner or occupier of such premises for any injuries or damages sustained by such person

while on the premises unless such accident was intentional on the part of the owner or occupier or was caused by the wilful or wanton disregard of the rights of others.

The statute has since been limited to private residential or farm premises. 62 *Del.Laws* c. 322, effective July 8, 1980.

from the County park in the *Caine* case." This comment suggests that the Court below found the public ownership of the land was crucial. This focus is reinforced by a comment in *Acton*.[3] But we do not think the distinction on the basis of public versus private ownership was intended to be comprehensive or exclusive.

Indeed, a reading of the *Caine* case demonstrates that this Court for the purpose of the Premises Guest Statute accepted the classifications in the Restatement of Torts (2d ed. 1965). For the immediate purpose of this case, the pertinent language in *Caine* is found at 379 A.2d 1114–1115:

> ... § 330 defines licensee this way: A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent.

> And § 332 defines a public invitee as: ... a person who is invited to remain on land as a member of the public for a purpose for which the land is held open to the public.

> Comment c of § 332 adds:

> It is immaterial that the person is one whom the possessor is not willing to receive as an invitee if the possessor's words or other conduct are understood and would be understood by a reasonable man, as indicating the possessor's willingness.

> Comment d of § 330 contains similar language.

■ Initially, therefore, we reject the implication in the letter opinion below that under the *Caine* case "public invitee" status is dependent upon the public ownership, e.g. in that case, a County park. Rather we think status determinations in the present context were intended to rest on the definitional classifications in the Restatement of Torts. See also *Bailey v. Pennington*, Del. Supr., 406 A.2d 44, 47–48 (1979), appeal dismissed 444 U.S. 1061, 100 S.Ct. 1000, 62 L.Ed.2d 744 (1980).

■ Second, contrary to the argument of the defendant, we find no Delaware case under our Premises Guest Statute controlling in the crossing situation factually presented here. This is not a case of plaintiff running alongside of a moving train or operating a motorcycle on a dirt path paralleling the tracks within the railroad's right of way. Compare *Acton, supra*, and *Brackin v. National Passenger Travel Co.*, Del. Supr., C. A. No. 78C–MR–30, letter opinion dated January 16, 1980. This is a case where the railroad maintained a privately-owned crossing in a manner that had every appearance of being a continuation of a public road regularly used by the public for a public purpose.

Thus, the determination of this interlocutory appeal depends on the characterization of the plaintiff as a "public invitee", a status previously recognized by our case law as not being a "guest without payment", or a "licensee", a status previously recognized by our case law as being a "guest without payment".[4]

There was no express invitation from the railroad to the plaintiff. The railroad further argues that an invitation cannot be implied because the plaintiff cannot demonstrate his use of the railroad crossing in any way benefited Conrail. On the instant record, we accept factually the absence of benefit asserted by the defendant. We turn therefore to the legal implications of the absence of benefit.

---

**3.** The *Acton* opinion says at 407 A.2d 205: "The public nature of the property in *Caine* distinguishes that case from the case at bar, in which the property is privately owned and occupied."

**4.** The rationale is that an invitation to the public at large is fundamentally different than the particular license involving a privately invited guest. The acceptance of an unlimited public invitation is sufficiently akin to a legal right to be present, such as ownership of an easement or a right of user, that it should be similarly treated. As the Superior Court suggested, the Premises Guest Statute was not intended to cover "the only legal access to a publicly maintained landfill." Unlike the Superior Court, however, we do not find the specific legislative phrase "guest without payment" compels the unintended result. See *Caine, supra*.

The railroad argues that Delaware law makes one using another's premises for his own benefit a licensee, not an invitee. *Slovin v. Gauger*, Del.Super., 193 A.2d 452, 460 (1963), aff'd Del.Supr., 200 A.2d 565, 567 (1964). That case involved the permitted use of school property under compulsion of statute by an amateur theatrical group. The plaintiff, a member of the group, was injured in a fall during a dress rehearsal triggered by the movement of a set of steps. Plaintiff was held to be a licensee, not an invitee. The Supreme Court noted "the purpose for which the plaintiff was on the School Board's premises was not for any purpose of the School Board but was for his purpose as a member of the Brookside Players." *Slovin*, 200 A.2d at 567. That case, however, did not deal with the concept of "public invitee". Compare *Caine, supra*, 379 A.2d at 1115. Indeed, the whole concept of "public invitee" appears to be one of relatively recent origin. Compare II Restatement of Torts § 330–332 (1934) with 2 Restatement (Second) of Torts § 330 and § 332 (1965). It would thus appear that the *Slovin* case would not control the issue presented on this appeal.

The question then becomes whether the concept of "public invitee" includes the concept of benefit flowing to the inviter. For guidance on this question, we elect to turn to the most recent Restatement and, not unexpectedly, the parties differ in their views as to what the Restatement says. Because the issue is so pointed and one that has some general interest, we quote the well-reasoned views of the parties at length.

### The Plaintiff's Argument

The Restatement of Torts (2d ed.) § 332(2) defines a public invitee as a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held opened to the public.

Invitation is defined in § 332 comment (b) as follows:

> [A]n invitation is conduct which justifies others in believing that the posses-

sor desires them to enter the land . . . . Any words or conduct of the possessor which lead or encourage the visitor to believe that his entry is desired may be sufficient for the invitation. A common form of invitation is preparation of the land for the obvious purpose of receiving the visitor, and holding it open for that purpose.

Comment (c) of section 332 states:

> In determining whether a particular person is an invitee, the important thing is the desire or willingness to receive that person which a reasonable man would understand as expressed by the words or other conduct of the possessor. It is immaterial that the person is one whom the possessor is not willing to receive as an invitee if the possessor's words or other conduct are understood, and would be understood by a reasonable man, as indicating the possessor's willingness.

Finally, under comment (d) section 332, the following is stated:

> Where land is held open to the public, there is an invitation to the public to enter for the purpose for which it is held open. Any member of the public who enters for that purpose is an invitee . . . .

It is clear that under the facts of this case, plaintiff was a public invitee under § 332:

1. Plaintiff was a passenger in a vehicle which was traveling on a public roadway.

2. . . . [P]hotographs show that the railroad crossing surface was paved and level with the road surface. The photographs further show that the roadway itself was paved.

3. There were no signs at the crossing indicating that the crossing was a private crossing.

4. The only means of access into the public landfill was by crossing the subject railroad tracks.

For the foregoing reasons, as a matter of law, it must be concluded that a reasonable man would understand that he was invited by Conrail to use the crossing as a member of the public.

*The Defendant's Argument*

The Superior Court's conclusion that Malin was not an invitee, which was drawn from the record facts, comports with the law as enunciated by the Restatement. In this regard, it is important to note the distinction drawn by the Restatement in Comment b. of § 332 between invitation and permission, which is of course the basis for distinguishing an invitee from a licensee.

b. *Invitation and permission.* Although invitation does not in itself establish the status of an invitee, it is essential to it. An invitation differs from mere permission in this: an invitation is conduct which justified others in believing that the possessor *desires* them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so.

\* \* \* \* \* \*

Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee, as stated in § 330; *but it does not make him an invitee, even where his purpose in entering concerns the business of the possessor.*

(emphasis added)

Further illumination of the distinction between invitation and permission when the lands are allegedly open to the public is provided by Comment d. of § 332. This Comment states in relevant part:

It is not enough, to hold land open to the public, that the public at large, or any considerable number of persons, are permitted to enter at will upon the land for their own purposes. As in other instances of invitation, there must be some *inducement* or *encouragement to enter*, some conduct indicating that the premises are provided and intended for public entry and use, and that the public will not merely be tolerated, but is *expected and desired to come.*

(emphasis added)

As the above commentary reveals, a person who is simply permitted to use property open to the public for his own purposes *is not* a public invitee. He is simply a licensee. The qualities of a licensee are discussed by the Restatement in § 330 and this discussion provides additional dimension to the analysis of the case at bar. Licensee is defined as ". . . a person who is privileged to enter or remain on land only by virtue of the possessor's consent." For purposes of the instant situation, the most pertinent analysis of the definition of a licensee provided by the Restatement can be found in Comment h. to § 330 which states:

h. *Persons included.* Included under licensees, among others, are three types of persons:

1. One whose presence upon the land is solely for his own purposes, in which the possessor has no interest, and to whom the privilege of entering is extended as a mere personal favor to the individual, *whether by express or tacit consent or as a matter of general or local custom.*

(emphasis added)

Conrail has recognized from the outset that it permitted members of the public including Malin to use its railroad crossing for their own purposes as related to the particular function of the landfill. However, Conrail has done nothing which can be construed as an invitation to Malin or any other member of the public to use the crossing for purposes that would inure to the benefit of Conrail. Furthermore, Malin has submitted no record evidence which might be construed to be an invitation by Conrail. Accordingly, under the rubrics of the Restatement cited above, Malin must be categorized as a licensee rather than a public invitee.

The thrust of the Restatement guidelines on this matter is reflected in the decisional law that is relevant to the case at bar. Perhaps the most significant point of reference in distinguishing between a licensee and a public invitee as pointed out by the Restatement and the courts relates to the determination of whether the possessor of the property in question receives

any benefit from the use of his property by the putative licensee or public invitee. In Delaware the rule has been declared explicitly that if one uses the premises of another for his own benefit, he is a licensee and not an invitee. *Slovin v. Gauger*, Del.Super., 193 A.2d 452, 460 (1963), *aff'd* Del.Supr., 200 A.2d 565 (1964).

■ We are persuaded that the plaintiff's position is the correct one. While admittedly the illustrations in the comment on subsection 332(2) suggest a benefit, there is no such direct language in the subsection and the comment at 2 Restatement (Second) of Torts, p. 178–179, includes the following noncontiguous two paragraphs, placed herein reversed in order of appearance.

> Where land is held open to the public, it is immaterial that the visitor does not pay for his admission, or that the possessor's purpose in so opening the land is not a business purpose, and the visitor's presence is in no way related to business dealings with the possessor, or to any possibility of benefit or advantage, present or prospective, pecuniary or otherwise, to the possessor.

> Thus where a strip of private land abutting upon the public sidewalk is so paved that it is indistinguishable from the sidewalk, the possessor holds it open to the public as provided for public use for the purpose of passage, and anyone so using it is an invitee. The possessor's duty to use reasonable care to keep such land in proper and safe condition is not far removed from his obligation to the public upon the highway itself, or to those who stray a few feet from it in the course of travel.

The defendant emphasizes the lack of inducement to demonstrate an expectation and a desire on the defendant's part for public entry. We agree that expectation and desire, and not benefit, are key elements under the Restatement's formulation. But we note that comment b at page 176 (as well as comment c noted in quotations above) suggests that expectation and desire must be viewed from the entering public's point of view. While we emphasize, as did the plaintiff, one sentence in this regard, we quote almost a full paragraph for the purpose of balance and context.

> b. *Invitation and permission.* Although invitation does not in itself establish the status of an invitee, it is essential to it. An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so. Any words or conduct of the possessor which lead or encourage the visitor to believe that his entry is desired may be sufficient for the invitation. A common form of invitation is preparation of the land for the obvious purpose of receiving the visitor, and holding it open for that purpose.

In this case, a member of the public on a public road going to a public landfill crossed a private railroad crossing that had every appearance of being a continuation of the public roadway. The appearance of that railroad crossing was an unequivocal act done by the defendant company, holding its land open to the public for the purpose of access to the landfill. Compare *Weldon v. Philadelphia W. & B. R. Co.*, Del.Super., 43 A. 156 (1899). In taking the garbage to the landfill, a desirable public function was being performed by the plaintiff. It would appear to a reasonable person in the plaintiff's position that his crossing the railroad tracks was both expected and desired. As the concept is set forth in the Restatement (Second), we find the plaintiff is a "public invitee", a status previously determined not to be a "guest without payment" under our Premises Guest Statute. Moreover, in the current appeal, where there is no dispute as to basic material fact, we think that, once the legal elements in the "public invitee" definition are settled, the ultimate factual inference is clear and this Court should make this ruling on status as a matter of law in this interlocutory appeal.

The order of the Superior Court is reversed and the case is remanded with the instructions that the plaintiff should be considered a "public invitee" and that the Premises Guest Statute is inapplicable in the case.