Joseph James **SCHORAH**, Plaintiff,

v.

The **BALTIMORE AND OHIO RAIL-ROAD COMPANY**, a corporation of the State of Maryland, Defendant.

Civ. A. No. 82–844 MMS.

United States District Court,
D. Delaware.

Oct. 19, 1984.

Ben T. Castle, and Donald Elihu Evans, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiff.

Robert G. Carey, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant.

OPINION

MURRAY M. SCHWARTZ, District Judge.

In this diversity action, plaintiff Joseph Schorah seeks to recover for injuries sustained in a motorcycle accident that occurred on defendant Baltimore and Ohio Railroad Co.'s (hereinafter "B & O") prop-

erty. The defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56. Because there remain material issues of fact, defendant's motion will be denied.

The events which gave rise to this lawsuit took place on a dirt roadway on B & O property in the Elsmere, Wilmington, Delaware railroad yard. The roadway was primarily used by railroad maintenance workers for access to a railroad construction site, but was also subject to what has been described as "at times ... quite extensive" vehicular and pedestrian traffic.[1] Railroad employees were particularly aware of the frequent use of the area by local motorcyclists.[2] Indeed, plaintiff asserts that he had received permission from these workers to ride his motorcycle on the roadway so long as he did not do so after 5:00 p.m.[3] The railroad denies consenting to such use and claims it had posted "no trespassing" signs to prevent these allegedly unwanted intrusions.[4]

In August, 1982, B & O erected a gate across the western end of the road to prevent outsiders from entering the railroad work area and to force vehicles to approach the area slowly. The two gateposts and the crossbar were initially constructed from spare steel rails. When the crossbar proved too heavy for railroad workers to maneuver, B & O promptly replaced it with a piece of gray galvanized pipe. Although the original gate had been painted yellow, the new crossbar was never similarly painted. There is conflicting testimony as to whether yellow streamers were hung from the pipe as a warning, but for purposes of this motion it must be assumed that the crossbar was nearly invisible to travelers. The record also reflects that the original crossrail was left on the ground next to the gate, perhaps signalling that the passage was clear. Plaintiff asserts that although he had traveled the roadway in the past, he was unaware the gate had been erected. One afternoon in October, 1982,[5] as plaintiff was driving his motorcycle on the road, he collided with the gray crossbar, suffering severe injuries.

Plaintiff argues that the property was open to public use and that he was present on the premises as either a public invitee or a licensee. He urges defendant was negligent in failing either to warn of the existence of the crossbar or to ensure that it was visible. Moreover, plaintiff asserts that even if he was only a trespasser, his presence should have been known to defendant and a negligence standard must still apply. Defendant counters that Delaware law prescribes a like standard for trespassers and licensees—liability ensues only for the landowner's wilful or wanton misconduct, not for mere negligence—and that plaintiff could have been no more than a licensee as a matter of law.

The characterization of plaintiff's status on the property is crucial to the determination of defendant's motion for summary judgment. This Court, in exercising its diversity jurisdiction, must make such substantive determinations pursuant to Delaware law. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Until recently, Delaware had legislatively eliminated the distinction between the duty owed a trespasser and a licensee and obviated the need for the Delaware courts to differentiate between the two classes. *See* Delaware Premises Guest Statute, 25 *Del.C.* § 1501 (1974), *amended by* 62 *Del.*

1. Wirosloff Deposition at 15.

2. *Id.*

3. Affidavit of Joseph Schorah at 2. Defendant urges this testimony be stricken as inadmissible hearsay. The statement has not, however, been considered for the truth of the matter asserted, but merely to show it was said and that plaintiff could reasonably have believed he had defendant's consent to enter the property. Under the

Federal Rules of Evidence, such a statement is not hearsay. *See* Fed.R.Evid. 801.

4. Gray Deposition at 36–37; Wirosloff Deposition at 20.

5. It is unclear from the record whether the accident occurred on the first, sixth or twelfth of October, 1982. The exact date is, however, immaterial to the disposition of this motion.

*Laws* ch. 322, § 1, effective July 8, 1980.[6] A 1980 amendment to that statute has limited its application to "private residential or farm premises."[7] As a result of the amendment the common law classifications have been resurrected with respect to occurrences on all other property. The hazardous task of this Court is to determine how the Supreme Court of Delaware would define trespasser, licensee, invitee, and the respective duties owed to each under the common law.

The few Delaware decisions issued prior to the enactment of the Premises Guest Statute comport with the principles of the *Restatement (Second) of Torts* with respect to the rights and liabilities of owners and users of land. *See, e.g., Maher v. Voss,* 48 Del. 45, 98 A.2d 499, 504 (1953) (landowner has duty to warn licensee of any known unappreciable risk); *Villani v. Wilmington Housing Authority,* 48 Del. 450, 106 A.2d 211, 213 (1954) (landowner need only refrain from wilful or wanton injury of a trespasser). In recent years, the Delaware Supreme Court has turned to the *Restatement* in this context. *See, e.g., Malin v. Consolidated Rail Corp.,* 438 A.2d 1221, 1223 (Del.1981) (applying *Restatement* §§ 330, 332(2)); *Acton v. Wilmington & Northern R.R.,* 407 A.2d 204, 205 (Del.1979) (applying *Restatement* § 329); *Caine v. New Castle County,* 379 A.2d 1112, 1114–15 (Del.1977) (applying *Restatement* §§ 329, 330, 332). Although these cases are not directly applicable to the case at bar, they are persuasive evidence that the Delaware Supreme Court would apply the *Restatement* in determining the status of landowners.

A trespasser is defined under the *Restatement* as one who "enters or remains upon the land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." *Restatement (Second) of Torts* § 329 (1965). Unless the landowner knows of the trespasser's presence on the premises, he or she is under no duty to make the property reasonably safe or to carry on activities so as not to endanger the trespasser. *Id.* § 333. In contrast, a licensee is defined as one who is "privileged to enter or remain on land only by virtue of the possessor's consent." *Id.* § 330. The landowner must warn a licensee of any known unreasonable risk which he or she may not discover or appreciate. *Id.* § 342. Finally, the *Restatement* defines a public invitee as anyone "invited to remain on land as a member of the public for a purpose for which the land is held open to the public." *Id.* § 332(2). A public invitee may hold the landowner liable for failure either to inspect the property or to exercise reasonable care to make it safe. *Id.* § 343.

In light of the above definitions, the Court rejects defendant's argument that the common law affords licensees only the identical minimal protection given to trespassers. Defendant's position is based on an application of the law derived under the Premises Guest Statute.[8] That statute was

---

**6.** Until 1980, the statute provided:

No person who enters onto the premises owned or occupied by another person, either as a guest without payment or as a trespasser, shall have a cause of action against the owner or occupier of such premises for any injuries or damages sustained by such person while on the premises unless such accident was intentional on the part of the owner or occupier or was caused by the wilful or wanton disregard of the rights of others.

25 *Del.C.* § 1501. The Delaware Supreme Court has construed "guest without payment" to be the equivalent of licensee. *Acton v. Wilmington & Northern R.R.,* 407 A.2d 204, 206 (Del.1979).

**7.** 25 *Del.C.* § 1501, 62 *Del.Laws* ch. 322, § 1 (1980).

**8.** The defendant cites *Acton v. Wilmington & Northern R.R., supra,* 4 (Del.1970), and *Rennick v. Glasgow Realty, Inc.,* 510 F.Supp. 638 (D.Del. 1981), for the proposition that "an owner or occupier of land owed the same limited duty to *all* licensees … as to trespassers." Defendant's Opening Brief at 13 (quoting *Acton* at 640 (emphasis by the *Acton* court)), and posits that those decisions comport with the "early common law decisions of the Delaware Courts on the duty owed by a landowner to a *trespasser.*" Defendant's Opening Brief at 14 (emphasis added). Defendant fails, however, to provide any authority as to the early common law view of the duty owed by a landowner to a *licensee.* Although defendant suggests that *Acton* and *Rennick* articulate the common law standard, there is no indication that either court has done

in derogation of, not in accordance with, common law doctrine and has been rendered inapplicable to the parties at bar by virtue of the 1980 statutory amendment. Since this Court concludes that the standard of care varies with one's status on the property, the issue becomes whether under the *Restatement* plaintiff's status may be assessed as a matter of law.

■ Construing the facts in the light most favorable to the non-moving party as must be done in a motion for summary judgment, *Space v. National Railroad Passenger Corp.*, 555 F.Supp. 163, 164 (D.Del.1983), there remains, on the basis of the present record, a question whether plaintiff was a public invitee, a licensee or a trespasser. The crucial difference between the protection afforded a public invitee and a licensee is the right of the former to recover for a landowner's failure to *inspect* the property for hazardous conditions, rather than only for a failure to warn against *known* hazards. *Compare Restatement* § 343 *with* § 342. The parties have not argued for purposes of this motion that the risk to which plaintiff was exposed—that of an allegedly invisible barrier blocking the roadway—was unknown to the defendant. Instead, the arguments have focused on whether plaintiff believed he was privileged to enter the property at all, and if so, what duty was owed him. Nevertheless, a factual question of defendant's knowledge of the risk has surfaced in the parties' briefs and is likely to arise again at trial. More specifically, defendant has asserted that yellow flags or streamers were hanging from the crossbar as a warning to travelers. Plaintiff's witness denies that such streamers were present at the time of the accident. Apart from the obvious question of credibility, this factual discrepancy suggests that perhaps the streamers were removed some time between defendant's last inspection of the premises and the day of plaintiff's accident. It is because of this factual question that the distinction between licensee and public invitee may be critical to the outcome of plaintiff's claim.

The concept of public invitee, though of only recent origin, has already taken root in Delaware's jurisprudence. *See Malin v. Consolidated Rail Corp.*, 438 A.2d 1221, 1224 (Del.1981), and *Caine v. New Castle County, supra*, at 1115, both applying *Restatement (Second) of Torts* § 332(2). Defendant contends that public licensee status is precluded by *Acton v. Wilmington & Northern Railroad, supra*, and *Brackin v. National Railroad Passenger Travel Co.*, No. 78C–MR–30, letter opinion (Del.Super. Jan. 16, 1980), which defendant alleges are factually indistinguishable from the case at bar. In both decisions plaintiffs were held to be licensees at best. *Acton, Brackin*, and the instant case are indeed similar, all involving accidents on railroad property either on or near the railroad tracks. Nevertheless, these Delaware decisions are not controlling. The private nature of the premises appears to have been fatal to the claim of public invitee in both *Acton* and *Brackin*. The Delaware Supreme Court has since explained that the concept of public invitee, while perhaps more obviously applicable to occurrences on public land, *Caine v. New Castle County, supra*, may pertain to incidents on private property as well. *Malin, supra*, at 1223. Moreover, from the facts of record, it is possible to infer that the road in question is more than the dirt "paths" which the *Acton* and *Brackin* courts considered closed to public vehicular traffic. The present case involves a

more than apply the clear mandate of the Delaware Premises Guest Statute. While in some respects that provision codified the common law, *see, e.g., Bailey v. Pennington*, 406 A.2d 44 (Del.1979), *appeal dismissed*, 444 U.S. 1061, 100 S.Ct. 1000, 62 L.Ed.2d 744 (1980) (common law classifications that existed at time of enactment were retained), it was in other respects a departure from the traditional view, *see, e.g., Stratford Apartments, Inc. v. Fleming*, 305 A.2d 624

(Del.1973) (legislative intent to protect landowner from suits by guests based on simple acts of negligence is in derogation of the common law). If defendant had some other authority for the principle that a licensee was afforded no greater protection under the common law than was a trespasser, the Court is unable to discern it. Moreover, there is no evidence in the decisions of Delaware to support defendant's view.

dirt roadway intersecting a public thoroughfare and improved with speed bumps and rumble strips. Perhaps most important, there is deposition testimony that for years, local commuters have been using the road as a short cut.[9] If, as the facts suggest, the roadway is held open to public traffic, then plaintiff conceivably falls within the purview of § 332 of the *Restatement* and must be accorded the protection given to a public invitee. As such, a showing that defendant had negligently failed to inspect the property for any risks which the plaintiff might not perceive or appreciate would be a sufficient basis for liability.

Defendant's motion also put into issue the more obvious question whether plaintiff was upon the railroad property as a licensee or a trespasser. In order to qualify as a licensee, there must be some indication that the possessor is "in fact willing that the other shall enter or remain on the land or that his conduct is such as to give the other reason to believe that he is willing that he shall enter if he desires to do so." *Restatement (Second) of Torts* § 330 comment c. The record supports more than one conclusion as to whether plaintiff might reasonably have believed that he was privileged to enter the premises, whether or not he was invited to use them as a member of the public. The defendant's employees have stated that they had long been aware that local residents were using the roadway for various purposes. Both plaintiff and his witness, a passenger on the motorcycle at the time of the accident, have stated that they were granted permission to ride in the area, so long as they avoided passing too close to the work zone.[10] Moreover, defendant's construction of speed bumps on the roadway so as to slow down (although not prevent) traffic[11] may be construed as a willingness to admit outsiders onto the property. Indeed

the existence of the gate in question might suggest that while travelers were prohibited from entering the work area, they were not similarly precluded from using the access road. On the other hand, a jury may ultimately conclude that no trespassing signs were in fact posted as alleged and that plaintiff was no more than a trespasser. In any event, these facts are not so unequivocal as to compel a finding that plaintiff was either a trespasser or a licensee as a matter of law.

Nor can the Court conclusively determine whether defendant has breached the duty of care owed to a licensee. As previously stated, a landowner has a duty to warn a licensee of any known unreasonable risk which may not otherwise be discovered or appreciated, or to take steps necessary to make the condition reasonably safe. *Maher v. Voss, supra*, 98 A.2d at 504 (citing *Restatement of Torts* § 342).[12] This essentially amounts to a standard of ordinary negligence. Questions of negligence are rarely decided on a motion for summary judgment, *Caine v. New Castle County*, 379 A.2d 1112, 1116 (Del.1977), and this case can be no exception. There is at least an inference on the facts of record that B & O knew of the dangers posed by a roadblock that could not be seen by travelers on the roadway. Whether at the time of the accident there were warning signs posted on the property or flags hanging from the bar, or indeed whether plaintiff should have seen the bar in time to avoid contact with it, is strictly within the province of the jury.

Finally, plaintiff asserts that even if he was trespassing on defendant's property, he was certainly a known or constant trespasser to whom a duty of reasonable care to warn of highly dangerous artificial conditions was owed.[13] Plaintiff's argument is supported by both the early Delaware com-

---

**9.** Affidavit of Juanita Schorah at 2.

**10.** Affidavit of Joseph Schorah at 2; Carmean Deposition at 24.

**11.** Wirosloff Deposition at 34.

**12.** Section 342 of the first *Restatement* was adopted materially unchanged in the second *Restatement*. *See Restatement (Second) of Torts* § 342 (1965).

**13.** Plaintiff's Brief in Opposition to Defendant's Motion at 15.

mon law, *see Beaston v. James Julian, Inc.*, 10 Terry 521, 49 Del. 521, 120 A.2d 317, 320 (Del.Super.1956), and the modern *Restatement, see Restatement (Second) of Torts* §§ 335–336. The record reflects ample evidence of B & O's awareness of the frequent motorcycle traffic on its property. Moreover, it cannot be doubted that an undiscernible roadblock could cause death or serious injury to any of these unwitting travelers. *Restatement (Second) of Torts* § 335(a)(ii). It again must be left to the jury to determine whether the crossbar was in fact nearly invisible and whether defendant had breached its duty to warn of the inherent risk it posed.

Based on the foregoing, this Court is unable to determine as a matter of law whether plaintiff crossed defendant's property as a trespasser, a licensee, or a public invitee. Only upon resolution of this first issue can the more critical question of defendant's liability for breach of the applicable standard of care be considered. Accordingly, the Court will enter an order denying defendant's motion for summary judgment.