**Herman E. TAYLOR, individually, and as next friend for Michael E. Taylor, minor, Plaintiffs,**

**v.**

**Merton E. STEELE, Jr., a minor, by his Guardian Ad Litem, Doris M. Di Amario, Defendant.**

Superior Court of Delaware, New Castle.

April 16, 1970.

Robert K. Payson, of Potter, Anderson & Corroon, Wilmington, for plaintiffs.

Alfred M. Isaacs, of Flanzer & Isaacs, Wilmington, for defendant.

STOREY, Judge.

In this case, the defendant has moved for summary judgment against the plaintiff based on the defenses of contributory wantonness and/or assumption of risk.

■ The facts shall be stated in the light most favorable to the party against whom summary judgment is requested. Wilson v. Tweed, 209 A.2d 899 (Del. Supreme Ct.1965).

On February 9, 1969, plaintiff Michael Taylor, one of two passengers in an automobile operated by Merton (Timmy) E. Steele, was injured when the automobile collided with a tree on Moore's Lane, New Castle, Delaware. At the time of the accident plaintiff was 15 years old, did not have a driver's license, and did not know how to drive. The defendant was 17 years old and was licensed to drive an automobile.

The sequence of events leading up to the accident were as follows:

Timmy picked up Michael at the latter's house at approximately 8:00 P. M. Michael, Timmy, and several other boys then rode around for awhile in the car Timmy was driving. Sometime after 9:00 P. M. Timmy arranged for the purchase of 1½ cases of beer to be sent to the home of Eugene Smallwood (the other passenger in the car at the time of the accident). While at the Smallwood home, Michael saw Timmy drink six cans of Budweiser beer. Michael drank one can. After remaining at the Smallwood home for two hours, Timmy, Michael and Smallwood left in Timmy's car for Gino's Restaurant in Wilmington Manor. At Gino's, Timmy ate two cheeseburgers and french fries and drank a coke. After Gino's, Timmy drove to Alvin's house in Castle Hills, drinking a beer on the way. Timmy finished his beer at Alvin's and drank no more. During these short trips, Michael did not notice Timmy driving in any unusual manner. On the way to the Sherwood Diner, however, Timmy said he felt funny and needed some coffee. At the Sherwood Diner when Timmy went in for his coffee, Michael remained in the car, thinking that Timmy would return shortly. After waiting 30 minutes, Michael went into the diner and found Timmy the center of attraction. Someone pointed to Timmy and said to Michael "Get him out of here, he's drunk." Michael escorted Timmy from the diner. Michael admitted that Timmy could not walk properly and stated that he believed Timmy was intoxicated at that time. As Timmy and Michael entered the car, Michael told him to take it easy and go back to Castle Hills. Timmy drove back to Gino's, which was closed, and on the way Michael threw out a can of beer so Timmy would not drink it. Then as Timmy began driving again, Michael became concerned since Timmy was hunched over the wheel. Michael thought that Timmy might have been trying to see through the snow then coming down. At this time Timmy reversed direction of his car by turning from the southbound to the northbound lanes of traffic. In making the crossover Timmy missed the three northbound traffic lanes and drove the car on the shoulder of the road until he reached the Doghouse Restaurant a short distance down the road. Timmy never stopped at the Doghouse because Michael pushed the wheel over, directing the car onto the travel lane. Then Timmy drove the car farther up the duPont Highway and took the overpass for Route 41 toward Interstate 95 and Newport. At this time, Timmy was driving properly and was no longer hunched over the wheel. Timmy thereupon encountered no difficulty in driving along Interstate 95 to the Landers' Lane exit, and thence to Moore's Lane. At this time Moore's Lane was wet and slushy from the snowfall. Timmy accelerated the car to 70 miles per hour and was egged on by Eugene Smallwood. Michael told Timmy to slow down because he, Michael, was too young to die. Michael also said that he wanted to go home because Timmy was driving too fast. Shortly thereafter Timmy failed to negotiate a curve and collided with a tree.

The question for determination is whether the facts compel a finding of contributory wantonness or assumption of risk by the plaintiff.

In Wagner v. Shanks, 194 A.2d 701 (Del. Supreme Ct.1963), a minor plaintiff sought recovery for damages suffered when a minor defendant was operating a motor vehicle which, while travelling at a high rate of speed, collided with a tree stump. One of the questions before the Court was whether the plaintiff's silence as to the high rate of speed would be sufficient to raise the issue of contributory wantonness on the part of the plaintiff. The Court said that:

"Thus, to be guilty of contributory wantonness, a plaintiff must do some overt act such as encouraging the driver, directing his course of action, etc. Mere silence on his part is not enough." *Id.* at 708.

and elsewhere that:

"However, a failure to exercise reasonable care on the part of the plaintiff is nothing more than contributory negligence. We have already indicated that this is no defense to defendant's reckless conduct. Under the specific circumstances of this case, we consider that (plaintiff's) failure, if in fact that is the case, to request (defendant) to drive more carefully is nothing more than contributory negligence. Hence, there is not sufficient evidence in this record to warrant on instruction by the trial court on the issue of contributory wantonness." *Id.* at 707.

In the instant case, Michael did not merely sit by passively while the defendant accelerated to 70 miles per hour. He requested that the defendant slow down and asked to be taken home because defendant was driving too fast. Further, in no way did Michael encourage Timmy to go faster; nor did he direct Timmy's course of action. As a matter of Delaware Law, then, Michael's conduct did not amount to contributory wantonness.

The defense of assumption of risk is available to the defendant and, if proven, would be a bar to recovery by the plaintiff. Bib v. Merlonghi, 252 A.2d 548 (Del. Supreme Ct.1969). In that case, however, the plaintiff voluntarily rode with the defendant, knew of defendant's intoxication, and had no compelling reason to ride with him. Such facts point to the Court's concern with the plaintiff's conduct in entering defendant's car and not with the subsequent conduct of plaintiff during the ride as in *Wagner.* Thus, in the instant case it is clear that the defense of assumption of risk would be applicable only with regard to plaintiff Michael Taylor's entering defendant's car at some point in the evening and, upon entering, impliedly consenting to take the risk involved in riding with the defendant.

Generally speaking, issues of negligence are not susceptible of summary judgment except when the moving party establishes the absence of a genuine issue of fact. Ebersole v. Lowengrub, 4 Storey 463, 180 A.2d 467 (1962). The moving party here has not demonstrated the absence of a genuine issue of fact with regard to assumption of risk. A jury could find that the plaintiff did not understand the risk he was taking or whether he was able to extricate himself from the situation. And the extent of plaintiff minor's assumption of risk, if any, will have to be measured by his maturity, ability to understand the danger, and all other circumstances of the case. O'Hara v. Petrillo Bros., Inc., 216 A.2d 672 (Del. Supreme Ct. 1966).

Accordingly, the defendant's motion for summary judgment is denied.

It is so ordered.