Michael SPACE, et al., Plaintiffs,

v.

NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a Amtrak, a Washington, D.C. corporation, Defendant.

Civ. A. No. 79–352.

United States District Court, D. Delaware.

Jan. 5, 1983.

Joel Tenenbaum, and Marsha Kramarck, of Woloshin & Tenenbaum, Wilmington, Del., for plaintiffs.

George H. Seitz, III, of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

In this diversity action, the plaintiff Richard Space, Sr., seeks to recover damages on his own behalf, and on behalf of his two children, Richard Space, Jr. and Michael Space, for injuries sustained by the two children while on the defendant National Railroad Passenger Corporation's (hereinafter "Amtrak") property. Jurisdiction is predicated upon 28 U.S.C. § 1332. The case

is currently before the Court on the defendant's Motion for Summary Judgment made pursuant to Fed.R.Civ.P. 56.

On the defendant's Motion for Summary Judgment, the facts must be viewed in the light most favorable to the plaintiffs.[1] *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). It appears that on May 21, 1978, Richard Space, Jr. ("Richard") age twelve and Michael Space ("Michael") age nine, in the company of a friend, went upon the defendant's property located directly behind the plaintiffs' home in Newport, Delaware. Upon the defendant's property was a transformer tower that carried electricity necessary for the operation of Amtrak's train system. The tower was equipped with a ladder that extended from approximately ground level to the top of the tower. In order to prevent unauthorized persons from climbing the ladder, however, an "anti-climb" device was placed around the ladder about five or six feet above the ground. The "anti-climb" device was a padlocked door which covered the rungs of the ladder.

The plaintiff children were able to climb the transformer tower despite the existence of the "anti-climb" device. Richard and Michael climbed up to a platform located thirty feet above the ground. While attempting to climb down from the platform, Michael's arm was "drawn" into contact with a 6600 volt electric wire located at the platform level. Richard, upon seeing his brother frozen to the wire, grabbed onto him in an effort to free him. In doing so, both children fell from the tower onto the ground. As a result of the accident, the children, particularly Michael, suffered severe injuries.

The complaint seeks relief in five counts, all based upon Delaware tort law. The first three counts are the individual claims of Richard Space, Sr., Richard, Jr. and Michael, each based upon Amtrak's alleged negligence. The final two counts seek recovery for Richard, Jr. and Michael on the theory that defendant's conduct was "wilful or wanton." The plaintiffs seek compensatory and punitive damages.

On this Motion for Summary Judgment, the defendant asserts that Counts I through III, each sounding in negligence, are precluded by 25 *Del.C.* § 1501, the Delaware Guest Premises Statute. The defendant further argues that Counts IV and V should be dismissed because the defendant's conduct, as a matter of law, was not wilful or wanton. Alternatively, the defendant argues that Counts IV and V should be dismissed because the plaintiff children assumed the risk of injury when they climbed the transformer tower.

### I. *Negligence Claims*

The defendant contends that the plaintiffs' negligence claims must be dismissed because they are barred by 25 *Del.C.* § 1501. The version of 25 *Del.C.* § 1501 in effect when the accident occurred [2] provided:

> No person who enters onto the premises owned or occupied by another person, either as a guest without payment or as a trespasser, shall have a cause of action against the owner or occupier of such premises for any injuries or damages sustained by such person while on the premises unless such accident was intentional on the part of the owner or occupier or was caused by the wilful or wanton disregard of the rights of others.[3]

The defendant contends that because it is undisputed that the plaintiff children were trespassers, Amtrak's liability can be predicated on intentional or wilful or wanton conduct, but not negligence, under the terms of 25 *Del.C.* § 1501.

---

**1.** There is little dispute over the underlying facts.

**2.** That version of 25 *Del.C.* § 1501 in effect on May 21, 1978 (the date of the accident) is the one that must be applied in this case. *See*

*Pietuszka and Gallucio Builders, Inc. v. McTaggart,* 333 A.2d 164, 165 & n. 1 (Del.1975).

**3.** 62 Del.Laws, c. 322, effective July 8, 1980, substituted "private residential or farm" for "the" near the beginning of the section.

An analysis of both the Delaware common law of tort and the legislative revisions which led to the applicable version of 25 *Del.C.* § 1501, is essential to determine whether Section 1501 precludes the negligence claims in this case. Under the common law of Delaware, as in nearly every state, a landowner has no duty of non-negligence to trespassers. *See Moran v. Delaware Racing Association,* 9 Storey 250, 218 A.2d 452, 453 (Del.Super.1966). Nonetheless, it was established at common law that a landowner would be liable for an injury inflicted in a wilful or wanton manner to a trespasser. Prosser, *Law of Torts,* § 58 at 362 (4th ed. 1971).

In addition, the courts have recognized that because of immaturity and want of judgment, a child may be incapable of understanding and appreciating all the possible dangers which he may encounter in trespassing. Thus, an exception from the wilful or wanton standard in the case of child trespassers has long been recognized at common law. *See Sioux City and Pacific Railroad Co. v. Stout,* 84 U.S. (17 Wall) 657, 21 L.Ed. 745 (1873); Prosser, *Law of Torts,* § 59 at 364–376 (4th ed. 1971). This exception developed originally through the legal fiction of "attractive nuisance" which posited that a child could be lured onto land by artifices that the defendant landowner built so that the defendant himself was responsible for the trespass. *See Soule v. Massachusetts Electric Co.,* 378 Mass. 177, 390 N.E.2d 716, 720 (1979). Therefore, in those circumstances where an "attractive nuisance" was found to exist, the common law allowed recovery for child trespassers if the landowner's conduct amounted to negligence. Delaware has long recognized a negligence standard in the case of child trespassers where an attractive nuisance, such as a power installation, is found to exist. *See Hurd v. Phoenix Co.,* 7 Boyce 332, 30 Del. 332, 106 A. 286, 287 (Super. 1918) (Pennewell, C.J. and Boyce, J.).

The "attractive nuisance" exception has been recognized in the Restatement of Torts. *Restatement (Second) of Torts* § 339 (1965) provides:

ARTIFICIAL CONDITIONS HIGHLY DANGEROUS TO TRESPASSING CHILDREN.

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Delaware has adopted the standards set forth in Section 339. *See Coe v. Schneider,* 424 A.2d 1, n. 1 (Del.1980); *Schorah v. Carey,* 331 A.2d 383, 384 (Del.1975). Therefore, as a matter of Delaware common law, a child trespasser can recover for the ordinary negligence of a landowner if the criteria of the *Restatement (Second) of Torts* § 339 are satisfied.

The predecessor statute to 25 *Del.C.* § 1501 was 25 *Del.C.* § 1421 which provided:

No person who comes onto the premises occupied by another person as his guest without payment shall have a cause of action for damages against the occupier of the premises unless such accident was intentional on the part of the occupier or was caused by his wilful or wanton disregard of the rights of others.

The Delaware courts have held that Section 1421 did not apply to child trespassers. *Pietuszka and Gallucio Builders, Inc. v. McTaggart,* 333 A.2d 164, 166 (Del.1975). Therefore, the standards of the *Restatement* § 339 were found applicable under 25 *Del.C.* § 1421. *See id.; Johnson v. Delmarva Power & Light Co.,* 312 A.2d 634, 638 (Del.Super.1973).

In 1973, 25 *Del.C.* § 1421 was amended and replaced with 25 *Del.C.* § 1501.[4] The 1973 amendment added "trespassers" to "guests without payment" as a category of persons to whom a landowner owed no duty of non-negligence. In the case of adult trespassers, this legislative amendment effected no change in the common law of Delaware. *Compare* 25 *Del.C.* § 1501 *with Moran v. Delaware Racing Association,* 9 Storey 250, 218 A.2d 452, 453 (Del.Super. 1966). The critical inquiry in this case, however, is whether 25 *Del.C.* § 1501 changed the negligence standard for child trespassers as outlined in Section 339 of the Restatement. If Section 1501 abrogates *Restatement* § 339, then plaintiffs' negligence claims must be dismissed.

In *Pietuszka and Gallucio Builders, Inc. v. McTaggart,* 333 A.2d 164 (Del.1975), the Delaware Supreme Court noted that 25 *Del.C.* § 1501 might impact upon the Restatement standards. The Court stated:

> In *Schorah* we held that the duty owned by a landowner to a trespassing child is measured by the Restatement, *supra.* Neither that case nor this involves the provisions of 25 *Del.C.* § 1501 and *we expressly abstain from any comment about the statute or its impact on Schorah.* (emphasis added).

*Id.* at 166 n. 2. The defendant, however, strenuously argues that the Delaware Supreme Court resolved the issue left open in *McTaggert* in the case of *Acton v. Wilmington and Northern Railroad Co.,* 407 A.2d 204 (Del.1979). The Court cannot agree.

In *Acton,* an eleven year old boy was either a trespasser or a guest without payment upon land occupied by the defendant railroad. While upon the defendant's property, the child fell as he ran alongside a moving train. When he fell, the child's right leg was severed by one of the train wheels.

The Supreme Court held that because the child was either a trespasser or guest without payment on the defendant's land, the plaintiff child's negligence claims were barred by 25 *Del.C.* § 1501. In dismissing the negligence claims, however, the Court made no reference to the *Restatement* § 339 standards.

Although *Acton* may appear to resolve the conflict between 25 *Del.C.* § 1501 and the *Restatement* § 339, it does not. First, the Delaware Supreme Court did not discuss the interrelationship of 25 *Del.C.* § 1501 and the *Restatement* § 339 because the plaintiffs in *Acton* explicitly rejected any reliance on Section 339.[5] Therefore, it was not necessary or proper for the Court in that case to decide what impact 25 *Del.C.* § 1501 has upon the Restatement standards.

In addition, it is fairly clear that *Restatement* § 339 would not have been applicable in *Acton* even if the plaintiffs had elected to rely on that provision. It is a nearly universally accepted view that a moving train is not, as a matter of law, an "attractive nuisance" under the Restatement standards. *Holland v. Baltimore & Ohio Railroad Co.,* 431 A.2d 597, 602 (D.C.App.1981) (en banc) (and cases cited therein); *see Railroad's Liability For Injury To Or Death Of Child On Moving Train Other Than As Paying Or Proper Passenger,* 35 A.L.R.3d 9, 32–35 (1971). For this second reason, *Restatement* § 339 was not applicable in *Acton* and hence the Supreme Court was not required to reconcile any possible incompat-

---

4. The full text of the statute is set forth at page 164, *supra.*

5. The attorneys for the defendant Amtrak in this case also represented the defendants in *Acton.* In a footnote on page 11 of their an-

swering brief in *Acton,* the defendants carefully pointed out to the Delaware Supreme Court that the "interrelationship of 25 *Del.C.* § 1501 and *Restatement 2d,* § 339" was not before the Court in that case.

ibility between the Restatement and 25 *Del.C.* § 1501.

In sum, *Acton* merely represents a situation where 25 *Del.C.* § 1501 was applicable and *Restatement* § 339 was not. In such a situation, 25 *Del.C.* § 1501 is clearly applicable.[6] In a similar vein in the more recent case of *Coe v. Schneider,* 424 A.2d 1 (Del. 1980), the Delaware Supreme Court applied the Restatement standard in a situation where 25 *Del.C.* § 1501 was not applicable. *See id.* at 1, n. 1.[7]

Therefore, this case is one of first impression because 25 *Del.C.* § 1501 and the *Restatement (Second) of Torts* § 339 are both applicable.[8] It is undisputed that the *Restatement* § 339 standards are clearly accepted in Delaware common law. *Coe v. Schneider, supra; Schorah v. Carey, supra.* The only issue is whether the Delaware General Assembly intended to eliminate the "attractive nuisance" exception of *Restatement* § 339 when it amended old section 25 *Del.C.* § 1421 to include "trespassers" in Section 1501.

■ There is no legislative history that provides insight into the reason for adding the term "trespassers" to the Guest Premises Statute. The Delaware Supreme Court, however, has stated that:

> The current statute (25 *Del.C.* § 1501), with the addition of the category of trespassers, more clearly reflects *the legisla-*

*tive intent to codify the common law.* (emphasis added).

*Acton v. Wilmington and Northern Railroad Co., supra,* 407 A.2d at 206. Given this intent to codify the common law, the General Assembly in enacting 25 *Del.C.* § 1501 simply was restating a familiar proposition of common law that a landowner owes no duty to a trespasser except for the wilful or wanton infliction of injury. *See Moran v. Delaware Racing Association, supra;* Prosser, *Law of Torts* § 58 at 362 (4th ed. 1971). It must also follow, however, that in codifying the common law, the legislature intended to preserve the common law exception for child trespassers set forth in *Restatement* § 339.

The essence of the defendant's position is that the General Assembly's purpose in enacting 25 *Del.C.* § 1501 was to abolish the "attractive nuisance" doctrine. The defendant has cited no authority in support of this contention. Furthermore, if the General Assembly's purpose was to abolish the child trespasser exception, it could have done so in a much more direct fashion than by simply adding the generic term "trespasser" to the Guest Premises Statute. This Court cannot accept the defendant's contention that the General Assembly intended to abolish the widely accepted[9] and longstanding[10] doctrine of "attractive nuisance" in such a backhanded fashion.

---

**6.** At common law, if a child trespasser is not within the special requirements of the *Restatement* § 339, liability would not be assessed against the landowner for ordinary negligence. *See Moran v. Delaware Racing Association, supra,* 218 A.2d at 453–454.

**7.** 25 *Del.C.* § 1501 was not applicable because the accident in *Coe* occurred in November, 1972, before Section 1501 was enacted.

**8.** In *Caine v. New Castle County,* 91–CA–1974 (Del.Super., March 11, 1976) (unreported decision), the Court specifically examined the interrelationship between 25 *Del.C.* § 1501 and the *Restatement* § 339 and concluded that Section 1501 applies to child trespassers and that it abrogates *Restatement* § 339. That decision was reversed on grounds closely related to the Court's analysis of Section 1501 and *Restatement* § 339 in *Caine v. New Castle County,* 379 A.2d 1112 (Del.1977). Therefore, the opinion

has been reviewed for its analytical value, but it is not considered to have any precedential weight. *Cf., Blake v. Kline,* 612 F.2d 718, 723 (3d Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980).

**9.** Every state except Maryland, New Hampshire, Ohio and Vermont recognize the child trespasser exception. *Soule v. Massachusetts Electric Co.,* 378 Mass. 177, 390 N.E.2d 716, 720 n. 10 (1979).

**10.** The "attractive nuisance" doctrine was initially advanced in this country in 1873. *See Sioux City and Pacific Railroad Co. v. Stout,* 84 U.S. (17 Wall) 657, 21 L.Ed. 745 (1873). In Delaware, the doctrine has been recognized since at least 1918. *See Hurd v. Phoenix,* 7 Boyce 332, 30 Del. 332, 106 A. 286 (Super. 1918).

■ Furthermore, assuming *arguendo* that 25 *Del.C.* § 1501 could be construed either to codify the common law or to abolish the child trespasser exception of *Restatement* § 339, this Court must choose the former construction. It is well settled that any statute in derogation of the common law must be construed against the party for whose benefit it is passed, in this case the landowner. *Stratford Apartments, Inc. v. Fleming*, 305 A.2d 624, 626 (Del.1973). Thus, the Court is compelled to reach the conclusion that 25 *Del.C.* § 1501 does not eliminate the standards of the *Restatement (Second) of Torts* § 339 adopted in *Schorah v. Carey, supra*. In the case of child trespassers a landowner is responsible for ordinary negligence under the *Restatement (Second) of Torts* § 339(e) if the other criteria of Section 339 are satisfied. It is not necessary at this juncture for the Court to determine whether the transmission tower in this case was an "attractive nuisance." *See Hurd v. Phoenix*, 7 Boyce 332, 30 Del. 332, 106 A. 286 (Super.1918). It is sufficient that the Court finds that the plaintiffs' negligence claims are cognizable under the *Restatement* § 339 standards and are not barred by 25 *Del.C.* § 1501.

## II. *Wilful or Wanton Conduct Claims*

The defendant also asserts that Counts IV and V of the complaint which advance claims based upon Amtrak's wilful or wanton conduct should be dismissed on summary judgment. Defendant argues that as a matter of law Amtrak's conduct was not wilful or wanton. Alternatively, defendant contends that Counts IV and V should be dismissed because the plaintiff children assumed the risk of their injuries.

The United States Court of Appeals for the Third Circuit has stated that summary judgment is a drastic remedy. *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981). This Court must resolve any doubts as to the existence of material facts against the moving party, in this case Amtrak. *Id.* Summary judgment may be granted for defendant only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that no genuine issue as to any material fact" exists concerning the plaintiffs' wilful or wanton conduct allegations. Fed.R.Civ.P. 56.

Plaintiffs' expert witness William Marcus Mazer testified that Amtrak failed to take several safety precautions concerning the transformer tower. Some of the particular defects noted were:

1. Lack of warning signs.

2. Defective insulation on the 6600 volt wire Michael Space came into contact with.

3. Inadequate ladder guard.

4. Lack of barrier prohibiting entry to the platform where the children were injured as required by the National Electric Safety Code.

5. Improper maintenance of platform level wires as required by the National Electric Safety Code.

Plaintiffs' expert summarized these numerous deficiencies in stating that Amtrak's safety measures concerning the tower were "grossly inadequate."

■ In order to sustain a claim based on wilful or wanton conduct, a plaintiff must show "the elements of consciousness of (defendant's) conduct, [a] realization of the probability of injury to another, and disregard of the consequences." *Bailey v. Pennington*, 406 A.2d 44, 46 (Del.1979), *appeal dismissed* 444 U.S. 1061, 100 S.Ct. 1000, 62 L.Ed.2d 744 (1980), *quoting Gallagher v. Davis*, 37 Del. 380, 183 A. 620, 622 (Super.1936). When viewed in the light most favorable to plaintiffs, the Court finds that Mazer's unrefuted testimony could be taken to show a conscious disregard for the probability of injury to the plaintiffs. The issue of whether defendant's conduct manifested such a conscious disregard for injury is a question for the jury. *See Green v. Millsboro Fire Co., Inc.*, 403 A.2d 286, 290 (Del. 1979). Therefore, the extreme remedy of summary judgment on the issue of defendant's wilful or wanton conduct is inappropriate in this instance.

Finally, the defendant argues that the plaintiff children assumed the risk of climbing the transformer tower and the subsequent risk of electric shock from the power line. A person only can assume a risk, however, if he fully understands and appreciates the risk. *Franklin v. Salminen,* 222 A.2d 261, 262 (Del.1966); *see Restatement (Second) of Torts* § 496 D (1965). Thus the Delaware Supreme Court has stated in a situation involving a child trespasser that:

> It must therefore appear, and in the context of summary judgment appear to a "reasonable certitude", that there is no issue of fact as to whether the child appreciated the *full* risk involved. (emphasis in original).

*Schorah v. Carey, supra,* 331 A.2d 383, 385 (Del.1975) (citations omitted).

The depositions of the plaintiff children indicate that although they were aware of some of the risks linked with their conduct, they had only a vague notion of the danger of electric shock. Defendant even admits that the children professed "some ignorance about the degree of danger associated with high voltage lines."[11] In this light, the Court finds that there is no "reasonable certitude" that the children fully appreciated all the risks involved in climbing the tower. The question of whether the plaintiff children assumed the risk for their conduct is also for the jury. *See Taylor v. Steele,* 266 A.2d 190, 192 (Del.Super.1970). *Cf., Caine v. New Castle County,* 379 A.2d 1112, 1116 (Del.1977) (questions of contributory negligence ordinarily for finder of fact).

In conclusion, the Court finds that the plaintiffs' negligence claims are not barred by 25 *Del.C.* § 1501. The Court further finds that genuine issues of material fact exist on the questions of Amtrak's wilful or wanton conduct and the plaintiff children's assumption of the risk for their injuries. The defendant's Motion for Summary Judgment is therefore denied.

An Order will be entered in accordance with this Opinion.

11. Defendant's Opening Brief at 19.