**Leon M. PORTER, Sr. and June Porter, Individually and as next friends of the minor plaintiff, Brian K. Porter, Plaintiffs Below, Appellants,**

v.

**DELMARVA POWER & LIGHT COMPANY, a Delaware corporation, City of Dover, Delaware, a municipal corporation, Delaware Home Builders Corporation, a Delaware corporation, Defendants Below, Appellees.**

Supreme Court of Delaware.

Submitted: March 8, 1988.
Decided: Aug. 11, 1988.

I. Barry Guerke, (argued) of Parkowski, Noble & Guerke, P.A., Dover, for appellants.

F. Alton Tybout, and Nancy E. Chrissinger, (argued) of Tybout, Redfearn, Casarino & Pell, Wilmington, for appellee Delmarva Power & Light Co.

Robert K. Pearce, (argued) of Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, for appellee City of Dover.

David H. Williams, and Francis J. Jones, Jr. (argued) of Morris, James, Hitchens & Williams, Wilmington, for appellee Delaware Home Builders Corp.

Before MOORE, WALSH and HOLLAND, JJ.

WALSH, Justice.

This is an appeal from a grant of summary judgment in the Superior Court, which barred recovery by a minor for injuries sustained while climbing an electric utility pole. The Superior Court ruled that the City of Dover ("Dover"), the owner of the pole, Delmarva Power & Light Company, ("Delmarva") whose high voltage lines were attached to the pole, and Delaware Home Builders Corporation, ("Delaware Home"), the owner of the real property to which the pole was attached, were all entitled to protection of 25 Del.C. § 1501, which precludes recovery by noninvitees for injury on residential and farm premises, in the absence of willful or intentional conduct. Plaintiffs, the parents and next friend of the injured child, Brian Porter ("Brian"), contend that the Superior Court's construction of the statute is erroneous as a matter of law. We agree and hold that plaintiffs' claim is not controlled by the farm premises statute but rather by common law principles. Accordingly, we reverse.

I

The circumstances of the minor plaintiff's injuries are not in dispute. Brian lived in a residential development, adjacent to a vacant lot in which neighborhood children often played. This lot, in turn, bordered a corn field through which Dover maintained pole lines over an easement granted by a predecessor in title of Delaware Home. On the date in question, October 12, 1981, Brian was searching for two lost dogs and climbed the pole to view the adjacent area. The pole was not enclosed nor were there any warning signs or barricades to prevent climbing. Climbing pegs, the lowest of which was 12 to 18 inches from the ground, permitted access to the top of the pole. Brian, believing the pole was a telephone pole, proceeded to climb it when he apparently came close to the high voltage lines owned by Delmarva. An electric shock, arcing from these lines, caused him to fall from the pole and sustain serious injury.

The pole in question had been installed in 1975 as the result of an agreement between Dover and Delmarva to connect their respective electric distribution systems. Originally the easement for the pole line had been owned by Delmarva but had been transferred to Dover in connection with the construction of the new pole line. Through a joint use agreement, Delmarva continued to transmit electricity over the pole line through high voltage lines in order to serve a customer in the area, while Dover maintained the poles.

Plaintiffs' complaint against Dover, Delmarva and Delaware Home posits liability on the doctrine of attractive nuisance. Specifically, it is claimed that all three entities permitted a dangerous and hazardous

instrumentality to exist on land over which they exercised joint responsibility, with knowledge that children frequented the area.[1] Since it is clear that plaintiffs do not contend that the defendants are guilty of conduct which can be characterized as "intentional," "willful" or "wanton," all defendants moved for summary judgment invoking the applicability of 10 *Del.C.* § 1501. That statute, sometimes referred to as the premises guest statute, provides:

§ 1501. Liability of owners or occupiers of land for injury to guests or trespassers.

No person who enters onto private residential or farm premises owned or occupied by another person, either as a guest without payment or as a trespasser, shall have a cause of action against the owner or occupier of such premises for any injuries or damages sustained by such person while on the premises unless such accident was intentional on the part of the owner or occupier or was caused by the willful or wanton disregard of the rights of others.

The plaintiffs argued in the Superior Court, and in this Court as well, that the terms "premises" must be limited to the uses which normally attend residential property or farm lands. To extend the concept to land-connected instrumentalities of a commercial and industrial nature, plaintiffs contend, is to accord to the premises guest statute a meaning not reasonably intended. Moreover, it is argued, the easement rights of Dover and Delmarva do not entitle them to immunity as "owners or occupiers," nor can the statute be read to preclude a child trespasser whose claim is based on the concept of attractive nuisance.

In granting summary judgment, the Superior Court adopted a literal reading of

section 1501 and ruled that: (1) the utility pole was located on farm premises "occupied" by both Dover and Delmarva and (2) the statutory term "person" included a child trespasser in derogation of the common law doctrine of attractive nuisance. We disagree with both rulings.

## II

■ In holding that Dover and Delmarva, as easement grantees, shared Delaware Home's status as an occupier of the premises, the Superior Court placed principal reliance upon this Court's decision in *Acton v. Wilmington and Northern R. R. Co.*, Del.Supr., 407 A.2d 204 (1979). In *Acton*, this Court, in affirming the grant of summary judgment against an eleven year old child struck by a train on a railroad right-of-way, ruled that the defendant railroad was an "occupier" within the meaning of the premises guest statute. The railroad, which had secured its right-of-way through condemnation, was determined to have the clear right to occupy the right-of-way through operation of its trains. *Acton*, however, was decided under a predecessor premises guest statute which made no distinction between uses of the premises.[2] The current version of the statute was amended with the obvious purpose of restricting its application to residential and farm premises, to the exclusion of commercial and industrial uses. With respect to the status of Dover and Delmarva this distinction is critical and requires further examination of the extent to which these separate and identifiable uses may claim statutory protection.

Dover acquired the easement in question in 1975 through a written easement agreement from a predecessor in title of Delaware Home. Subsequently, Dover and Delmarva entered into an agreement under

---

1. International Telephone & Telegraph Corporation, the designer and fabricator of the pole was also named as a defendant but was granted summary judgment on the basis of statute of limitations. *See City of Dover v. International Telephone & Telegraph Corporation*, Del.Supr., 514 A.2d 1086 (1986).

2. 25 *Del.C.* § 1501 as considered in *Acton* provided:

No person who enters onto the premises owned or occupied by another person, either as a guest without payment or as a trespasser, shall have a cause of action against the owner or occupier of such premises for any injuries or damages sustained by such person while on the premises unless such accident was intentional on the part of the owner or occupier or was caused by the willful or wanton disregard of the rights of others.

which both entities jointly shared design and use of the pole line to be erected on the easement. The 1975 agreement granted Dover a perpetual easement to a "25 foot wide strip of land" for the following purposes:

2. The purpose of the easement shall be for Grantees, its successors or assigns, to have the uninterrupted right, privilege and authority to enter upon and construct, erect, extend, renew, operate, replace, relocate, repair and perpetually maintain a pole line with the necessary wires, cross arms, guy wires and other usual fixtures and appurtenances, as may be necessary for the convenient transaction of grantees' business on said land and on and along the said streets or highways adjacent thereto.

3. The easement shall include the right of ingress and egress to construct, renew, repair, relocate and/or remove the aforesaid facilities presently existing on the premises and those to be constructed or erected in the future and the right to trim, cut and remove trees and underbrush and other obstructions that are within 20 feet of any wire strung on said pole line.

While the agreement further provided that the grantor could use the land covered by the easement, such use was not to be "inconsistent with the purposes for granting this easement or not in interruption of the business of the Grantee to be conducted upon said easement." Thus, even though the underlying premises might remain farm land, thereby permitting the grantor to use the land under the pole line for farming, the nature of the easement, and the pole line it supported, was industrial—the transmission of electrical energy.[3]

In focusing on the nature of the underlying farm premises and not on the use of the easement, the Superior Court erred. The premises/function distinction which the statute, in its present form, reflects was inserted to limit the class of property owners who could claim the protection of the statute. Moreover, since it is the pole, not the farm land under it, which is the instrumentality claimed to have caused injury, the underlying rationale of the statute, limiting the liability of residential and farm occupiers, is not served by seeking to extend its protection to industrial or commercial occupiers. It need hardly be noted that the hazards which attend industrial and commercial activities, and the attendant restrictions to access by noninvitees, implicate liability considerations different from those of farm and residential use. We conclude, therefore, that under the circumstances of their actual use of the easement, Dover and Delmarva may not be deemed occupiers of farm premises.

### III

Having concluded that Dover and Delmarva may not invoke the protection of section 1501, we next address the question of whether Delaware Home as the acknowledged occupier of the underlying land may invoke the statute to bar plaintiffs' claim bottomed on attractive nuisance. In doing so, we accord to plaintiffs, as did the court below, the benefit of all factual inferences and assume that Delaware Home as the owner of the farm premises shared some responsibility for the existence of the pole line. Our assumption is not intended, of course, to preclude an evidentiary showing by Delaware Home that it bore no factual or legal responsibility for the existence on its property of an alleged attractive nuisance.

The precise issue posed is whether section 1501, in its present form, expresses the legislative intent to abrogate the common law right of child trespassers to recover under claims of attractive nuisance. It is an issue which this Court has obliquely encountered, but did not decide, on an earlier occasion. In *Pietuszka and Gallucio Builders, Inc. v. McTaggart*, Del.Supr., 333 A.2d 164 (1975), we ruled that a child trespasser's claim based on attractive nuisance

---

**3.** It is conceded that the pole line in question was a transmission line and did not provide local electric service to the property it crossed. We do not decide whether a pole line providing local electric service to farm or residential property would fall within the protection of the statute.

is to be measured by common law standards as exemplified in the *Restatement (Second) of Torts* § 339,[4] and not by the premises guest statute then in effect. Significantly, the statute in effect at the time of injury in *McTaggart* barred recovery based on negligence claims to a "guest without payment." The statute was later amended to add trespassers as an additional classification of affected claimants. This Court, in rejecting the contention that the change was a mere clarification, ruled that the child's claim was governed by the less restrictive statute in effect at the time of the injury and "abstain[ed] from any comment" concerning the effect of the trespasser amendment on section 339 of the Restatement. We are now required to face that question directly.

The Superior Court concluded that the claims of child trespassers were subject to the strictures of section 1501 because it contains no express exemptions modifying the term "no person." Although we agree that the "no person" language is all inclusive in scope, we note that the same term appeared in each of the predecessor statutes. We do not agree, however, with the Superior Court that the language of section 1501 is clear and unambiguous upon its face. The term "trespassers" makes no distinction between children and adults despite the significance this distinction enjoyed in prior Delaware law. The precise question is, therefore, whether the General Assembly intended to include children within the trespassing classification. This inquiry is best pursued through accepted standards for determining statutory intent.

■■■ The premises guest statute, like the now defunct automobile guest statute which it resembles in both language and intent, is in derogation of the common law and, as such, must be strictly construed against the party for whose benefit the law was passed. *Stratford Apartments, Inc. v. Fleming,* Del.Supr., 305 A.2d 624 (1973). Moreover, when the statute under construction does not define its terms it is proper to refer to the common law for the meaning of disputed language. *Franklin Fibre–Lamitex Corp. v. Director of Revenue,* Del.Super., 505 A.2d 1296 (1985) *affd.,* Del.Supr., 511 A.2d 385 (1986). In the absence of a specific statutory definition, a plaintiff faced with the bar of the premises guest statute is entitled to assert a status previously recognized by Delaware case law, including definitional classification in the Restatement of Torts. *Malin v. Consolidated Rail Corp.,* Del.Supr., 438 A.2d 1221, 1223 (1981).[5]

■■■ Even prior to the adoption of the Restatement standard by this Court in *Schorah v. Carey,* Del.Supr., 331 A.2d 383 (1975), the concept of attractive nuisance enjoyed recognition under Delaware law. In *Hurd v. Phoenix Co.,* Del.Super., 106 A. 286, 287 (1918), Chief Justice Pennewill, in overruling a demurrer to a complaint seeking recovery for the death of a nine year old child who climbed a spiked pole carrying electric transmission lines commented:

---

4. *Restatement (Second) of Torts* § 339 provides:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

5. This tool of statutory construction is, itself, legislatively authorized.

Words and phrases shall be read with their context and shall be construed according to their common and approved usage of the English language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

1 *Del.C.* § 303.

It seems to be held by numerous authorities that if the object which caused the injury was located at a place where the child was invited, or had a right to go, and where children are expected to be; was easily accessible, and attractive and alluring to children of tender years, the maintenance of such an object would constitute negligence. Whether all of these facts could be proved at the trial or not, they are averred in plaintiff's declaration, and for the purposes of the case now before the court are admitted by the defendant to be true.

As the doctrine of attractive nuisance evolved under Delaware law, the child's status as a trespasser, as distinguished from an invitee or licensee, was considered no bar to recovery. *See Johnson v. Delmarva Power & Light Co.*, Del.Super., 312 A.2d 634 (1973).

█ In view of the long adherence in Delaware decisional law to the rule of § 339 of the Restatement of Torts and the underlying concept of attractive nuisance, *Coe v. Schneider*, Del.Supr., 424 A.2d 1, 2 (1980), a legislative intent to eliminate this humanitarian doctrine should not be lightly inferred. Indeed, it may plausibly be argued that the "trespasser" amendment did no more than codify the common law with respect to adult trespassers to whom the landowner owed only the duty to refrain from conduct of a wanton or willful nature. *See Space v. National R.R. Passenger Corp.*, D.Del., 555 F.Supp. 163, 167 (1983). As the court noted in *Space*, had the General Assembly intended to abolish the child trespasser exception it could have done so directly rather than in a "backhanded fashion."

To construe section 1501 to eliminate the doctrine of attractive nuisance based on a literal reading of its most recent amendment creates a result at variance with the principle's historical acceptance under Delaware law. Moreover, our law has long recognized that a child of tender years is not to be held to the same level of foreseeability or appreciation of danger as an adult. *Travers v. Hartman*, Del.Super., 92 A. 855 (1914). Where entrance to the land is in no way restricted and, as in this case, its perimeter indistinguishable from adjacent lands upon which the child is free to enter, a restrictive reading of the statute clearly produces an unreasonable result. *See Richardson v. Wile*, Del.Supr., 535 A.2d 1346, 1348 (1988); *Burpulis v. Director of Revenue*, Del.Supr., 498 A.2d 1082, 1087 (1985).

We conclude, therefore, that section 1501 may not be construed to bar recovery by a trespassing child whose claim is premised upon the provisions of the *Restatement (Second) of Torts* § 339. Accordingly, the grant of summary judgment in favor of Delaware Home must be reversed.

## IV

█ Dover has also cross-appealed an earlier ruling of the Superior Court which determined that, in the operation of the electric transmission line, Dover did not enjoy governmental immunity under the so-called County and Municipal Tort Claims Act, 10 *Del.C.*, Ch. 40. *Porter v. Delmarva Power & Light Co.*, Del.Super., 488 A.2d 899 (1984). Dover renewed its motion to dismiss in 1986 on the strength of a decision of another Superior Court judge which appeared to be at variance with the earlier ruling. This motion was also denied. *Porter, et al. v. Delmarva Power & Light, et al.*, Del.Super., C.A. No. 83C–SE–75, Taylor, J. (January 7, 1987) [available on WESTLAW, 1987 WL 8667]. This Court refused the grant of an interlocutory appeal on the basis of the alleged variance in Superior Court rulings. *City of Dover v. Porter, et al.*, Del.Supr., 522 A.2d 347 (1987) (ORDER).

Dover's attempt to secure review of the Superior Court's denial of its motion to dismiss must be rejected. Conceptually, there seems to be a mootness concern in permitting a cross-appeal from a denial of an earlier motion to dismiss by a party who secures summary judgment on an alternative ground. In any event, our reversal of the grant of summary judgment places this case in the same posture it enjoyed when this Court refused interlocutory review. To permit Dover to secure review in the

context of this appeal would circumvent both our previous ruling and the standards governing interlocutory appeals set forth in Supreme Court Rule 42. Accordingly, Dover's cross-appeal is STRICKEN as an unauthorized interlocutory appeal. *See Baylis v. Wilmington Medical Center, Inc.,* Del.Supr., 477 A.2d 1051, 1059 (1984).

Finally, we note that Delmarva seeks review of an alternative claim for summary judgment, which it asserted in the Superior Court, based on its lack of control over the pole in question. Although this contention was fully briefed in the Superior Court, it was not ruled upon. Even though the issue was fairly presented below and this Court may proceed to decide it, in the exercise of discretion we decline to do so, preferring, instead, the benefit of the Superior Court's ruling in the first instance. Supr. Ct.R. 8.

REVERSED AND REMANDED.